IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| NEW YORK AMERICAN WATER COMPANY, INC.,<br><br>Plaintiff,<br><br>v.<br><br>THE DOW CHEMICAL COMPANY, FERRO CORPORATION, VULCAN MATERIALS COMPANY, SHELL OIL COMPANY, individually and doing business as SHELL CHEMICAL LP; JOHN DOE DEFENDANTS 1-50,<br><br>Defendants. | Civil No.:<br><br>**COMPLAINT**<br>**JURY DEMAND** |

New York American Water Company, Inc. ("NYAW" or "Plaintiff") files this Complaint against the Defendants named herein and in support thereof alleges as follows:

## SUMMARY OF THE CASE

1. NYAW brings this action for damages, contribution and reimbursement of costs incurred, and which continue to be incurred, to address the presence of 1,4 Dioxane found in the public water supply systems owned and operated by NYAW throughout the State of New York and in the groundwater that serves as the supply source for those systems. As the manufacturers and sellers of products that contain 1,4 Dioxane, Defendants The Dow Chemical Corporation, Ferro Corporation, Vulcan Materials Company, Procter & Gamble Company, Shell Oil Company, individually and doing business as Shell Chemical LP (collectively "Defendants") have discharged 1,4 Dioxane into, or are otherwise responsible for 1,4 Dioxane released into, the groundwater that serves as the supply source for NYAW's public water supply systems.

1

2. For years, Defendants manufactured, sold, and distributed 1,4 Dioxane and products containing 1,4 Dioxane, including paints, varnishes, lacquers, cosmetics, deodorants, cleaning and detergent preparations, and others.

3. Defendants knew, or should have known, that 1,4 Dioxane and related constituents present unreasonable risks to human health, water quality, and the environment and of the dangers associated with this toxic substance. Yet, Defendants handled, discharged and were otherwise responsible for the release of 1,4 Dioxane into the environment without sufficient containment or caution. Defendants' acts and omissions resulted in the presence of 1,4 Dioxane in the water sources of NYAW's public supply well systems. As a result of the occurrence of 1,4 Dioxane in the environment caused by Defendants' handling of 1,4 Dioxane and products containing 1,4 Dioxane, NYAW has been required to fund sampling and investigation of 1,4 Dioxane contamination, and will be required to implement capital improvements in the future that will result in ongoing operation and maintenance costs and future damages in order to remove and treat for the presence of 1,4 Dioxane in its public water supply systems.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction under federal diversity, pursuant to 28 U.S.C. § 1332, as the parties are completely diverse and the amount-in-controversy exceeds $75,000.

5. Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events giving rise to this Complaint occurred in this District.

## PLAINTIFF

6. Plaintiff NYAW is a New York corporation with its principal place of business at 60 Brooklyn Avenue, Merrick New York, 11566. NYAW is a direct, wholly owned subsidiary

of American Water Works Company, Inc., the largest publicly traded water and wastewater utility company in the United States.

7. NYAW owns and operates seventeen (17) public supply well systems and operates two (2) public supply well systems operated pursuant to the authorization of the New York State Public Service Commission ("NYSPSC"). NYAW's public water systems serve an estimated one hundred, twenty-five thousand (125,000) customers in communities throughout the State of New York, including Nassau, Orange, Putnam, Sullivan, Ulster, Washington, and Westchester counties.

8. NYAW relies on groundwater aquifers to supply water for its public water systems. The systems include over 100 wells, which feed into over 50 points of entry.

## **DEFENDANTS**

9. Defendant The Dow Chemical Company ("Dow") is a Delaware corporation with its principal place of business in Midland, Michigan. At all times relevant to this action, Dow was doing business in the state of New York.

10. Defendant Ferro Corporation ("Ferro") is an Ohio corporation with its principal place of business in Mayfield Heights, Ohio. At all times relevant to this action, Ferro was doing business in the state of New York.

11. Defendant Vulcan Materials Company ("Vulcan") is a New Jersey corporation with its principal place of business in Birmingham, Alabama. At all times relevant to this action, Vulcan was doing business in the state of New York.

12. Defendant Procter & Gamble Company ("Procter & Gamble") is an Ohio corporation with its principal place of business in Cincinnati, Ohio. At all times relevant to this action, Procter & Gamble was doing business in the state of New York.

13. Defendant Shell Oil Company, individually and doing business as Shell Chemical LP ("Shell), is a Delaware corporation with its principal place of business in Houston, Texas. At all times relevant to this action, Shell was doing business in the state of New York.

14. Upon information and belief, Defendants John Does 1-50 also manufactured and sold 1,4 Dioxane or products that contain 1,4 Dioxane. Plaintiff NYAW presently lacks information sufficient to specifically identify the names of Defendants sued herein under the fictitious names DOES 1 through 50. NYAW will amend this Complaint to show their true names if and when they are ascertained.

## **1,4 DIOXANE**

15. 1,4 Dioxane is a synthetic industrial chemical. The colorless, flammable liquid has many purposes. It is used as a solvent for extracting animal and vegetable oils and in the formulation of inks, coatings, adhesives, paints, varnishes, lacquers, cosmetics, deodorants, cleaning and detergent preparations, and in scintillating fluids.

16. The use of 1,4 Dioxane has also been found in the processing of crude petroleum, petroleum refining, petrochemicals, pulp and paper, explosives, commercial printing, electroplating/polishing, pesticide and agricultural manufacture, dyes, fiber manufacture, pharmaceuticals, adhesives, semiconductors, electronic components, photographic equipment, magnetic recording media, polymers, plastics, rubber manufacture, and organic and inorganic chemical manufacture.

17. 1,4 Dioxane has often been used with chlorinated solvents, particularly 1,1,1-trichloroethane (TCA), to stabilize products and prevent corrosion. Although TCA was banned in the mid-1990s, its use continued through exemptions for existing stocks and it is found at

many former industrial and hazardous waste sites indicating the likelihood that 1,4 Dioxane might also be present.

18. The list of ordinary consumer products containing 1,4 Dioxane as a byproduct surfactant is extensive. The products include shampoos, laundry detergents, antibacterial soap, body washes, cosmetics, antifreeze, aviation de-icing and foaming agents.

19. The United States Environmental Protection Agency ("EPA") has listed 1,4 Dioxane as a probable human carcinogen based on the results of animal studies, which also show that 1,4 Dioxane can target the liver, kidneys, and respiratory system, and that prenatal exposure can harm a developing fetus.

20. 1,4 Dioxane is extremely persistent in the environment and resistant to typical environmental degradation processes. The contaminant is also highly mobile because it does not adsorb to soil particles. Thus, it migrates long distances through soil and groundwater.

21. 1,4 Dioxane does not respond to traditional treatment methods. Pumping and treating groundwater with Granular Activated Carbon or air stripping are not effective in removing this chemical. Treatment alternatives are therefore difficult and expensive.

22. 1,4 Dioxane has been identified as an "emerging contaminant" by the EPA. This term describes contaminants about which the scientific community, regulatory agencies and the general public have a new and increasing awareness or understanding about how they move in the environment or affect public health.

23. 1,4 Dioxane, like other emerging contaminants, has become the focus of active research and study, which means that new information is released periodically regarding the effects on the environment and human health as a result of exposure to the chemicals.

24. The New York State Department of Health ("NYSDOH") and the New York State Department of Environmental Conservation ("NYSDEC") have focused attention on 1,4 Dioxane. The New York Drinking Water Quality Council ("NYDWQC"), with the backing of NYSDOH and NYSDEC commissioners, recently recommended that New York adopt the nation's first Maximum Contamination Level ("MCL") standard at 1.0 part per billion (ppb) to regulate the levels of 1,4 Dioxane allowed in drinking water supplies.

25. In connection with its emerging contaminant studies, EPA implemented an Unregulated Contaminant Monitoring Rule Number 3 in 2012 ("UCMR 3"), which was designed to collect nationwide information regarding the occurrence of 1,4 Dioxane contamination in the public's water supply.

26. UCMR 3 required sampling of Public Water Systems ("PWSs") serving more than 10,000 people (i.e., large systems) and 800 representative PWSs serving 10,000 or fewer people (i.e., small systems) for 21 chemicals, including 1,4 Dioxane, during one consecutive twelve month period in the timeframe between 2013 through 2015.

27. In 2015, NYAW participated in the UCMR 3 sampling for its facilities that serve more than 10,000 people.

28. The results of the UCMR 3 sampling revealed the presence of 1,4 Dioxane compounds in groundwater at various locations throughout New York.

29. As manufacturers, sellers, handlers and dischargers of 1,4 Dioxane, and products containing 1,4 Dioxane, Defendants knew or should have known that the inclusion of 1,4 Dioxane chemicals in any products presented an unreasonable risk to human health and the environment.

30. Defendants knew or should have known that 1,4 Dioxane are highly mobile, extremely persistent, and highly likely to contaminate water supplies if released to the environment.

31. Defendants' knowledge of the adverse impacts from 1,4 Dioxane to human health and the environment amounts to reckless disregard to human health and environmental safety. Nonetheless, Defendants negligently and recklessly manufactured and sold 1,4 Dioxane and products containing 1,4 Dioxane with no warnings or instructions on use or disposal to avoid contamination.

32. Defendants' actions have directly resulted in contamination of a portion of the wells that make up NYAW's water supply systems. Because Defendants' 1,4 Dioxane has infiltrated the groundwater that serves as the source for NYAW's public water supply system, contamination of NYAW's wells is recurring and continuing.

## NYAW WATER SYSTEM IMPROVEMENTS

33. NYAW is committed to the supply of potable drinking water consistent with federal and state guidelines and requirements. NYAW must therefore implement remedies to assure that the water it supplies to its customers meets these standards.

34. As a direct result of Defendants' action, NYAW has had to address 1,4 Dioxane contamination. In doing so, NYAW has conducted and continues to conduct sampling, studies and investigations related to 1,4 Dioxane, which requires funding by NYAW, including costs for its personnel to supervise the assessments, and costs to develop 1,4 Dioxane treatment scenarios, and costs to analyze available alternatives.

35. NYAW has incurred, and will continue to incur, significant costs, related to 1,4 Dioxane contamination. In addition to sampling and assessment of 1,4 Dioxane contamination

in its systems, capital improvements and other system adjustments will be necessary to assure sufficient non-1,4 Dioxane impacted water supplies. Operation and maintenance measures for these improvements will be ongoing and add further to the costs that NYAW will incur in address Defendants' 1,4 Dioxane contamination.

## CAUSES OF ACTION

## COUNT ONE – STRICT LIABILITY (DEFECTIVE DESIGN)

36. Plaintiff NYAW hereby incorporates by reference the allegations set forth in paragraphs 1-35 of this Complaint as if they were set forth fully herein.

37. Defendants engaged in the design, manufacturing, marketing, and sales of 1,4 Dioxane chemicals and products containing 1,4 Dioxane, resulting in contamination of the environment, including the groundwater that serves as the water source for Plaintiff NYAW's public water supply systems, thereby causing damage to Plaintiff.

38. As manufacturers of 1,4 Dioxane-containing products, Defendants had a strict duty not to place into the stream of commerce 1,4 Dioxane and 1,4 Dioxane-containing products that are not reasonably safe and that are unreasonably dangerous in their effect on the environment and the activities and rights of others.

39. Defendants knew or should have known of the persistence and high mobility of 1,4 Dioxane in the environment, and the foreseeable risk that their 1,4 Dioxane and 1,4 Dioxane-containing products would be discharged, released, or disposed of in the environment.

40. By causing 1,4 Dioxane contamination and the resulting impact to Plaintiff NYAW's public water supply systems, Defendants engaged in marketing products that are not reasonably safe and are unreasonably dangerous, for which they are strictly liable.

41. As a result of Defendants' marketing of products that are not reasonably safe and

are unreasonably dangerous, Plaintiff NYAW has incurred, or will incur, investigation, cleanup, remediation, and removal costs and damages related to 1,4 Dioxane contamination.

## COUNT TWO – STRICT LIABILITY (FAILURE TO WARN)

42. Plaintiff NYAW hereby incorporates by reference the allegations set forth in paragraphs 1-35 of this Complaint as if they were set forth fully herein.

43. Defendants engaged in the design, manufacturing, marketing, and sales of 1,4 Dioxane chemicals and products containing 1,4 Dioxane, which Defendants knew or should have known, would result in contamination of the environment, including the groundwater that serves as the water source for Plaintiff NYAW's public water supply systems, thereby causing damage to Plaintiff.

44. Defendants knew or should have known of the adverse impacts the exposure to 1,4 Dioxane would have on the environment and the activities and rights of others.

45. Defendants knew or should have known of the persistence and high mobility of 1,4 Dioxane in the environment, and the foreseeable risk that their 1,4 Dioxane and 1,4 Dioxane-containing products would be discharged, released, or disposed of in the environment.

46. Defendants failed to provide warnings or instructions sufficient to notify the users of the dangers inherent in their products.

47. Defendants' failure to provide notice or instruction regarding the dangers to human health and the environment rendered Defendants' 1,4 Dioxane and 1,4 Dioxane-containing products unreasonably dangerous for the purposes intended and promoted by Defendants.

48. This failure to warn or adequately instruct regarding the dangers associated with use of these products directly and proximately caused harm to Plaintiff NYAW.

## COUNT THREE – NEGLIGENCE

49. Plaintiff NYAW hereby incorporates by reference the allegations set forth in paragraphs 1-35 of this Complaint as if they were set forth fully herein.

50. Defendants had a duty to exercise due or reasonable care in the manufacture, distribution, and use of 1,4 Dioxane and 1,4 Dioxane -containing products so as to avoid harm to those who would be foreseeably injured by 1,4 Dioxane environmental contamination.

51. Defendants knew or should have known that 1,4 Dioxane and their 1,4 Dioxane-containing products would result in the release, discharge, or disposal of 1,4 Dioxane into the environment that would lead to contamination of drinking water supplies and hazards to human health if not treated.

52. By failing to exercise due care in the design, manufacturing, marketing, and sale of 1,4 Dioxane and 1,4 Dioxane -containing products, Defendants breached their duty to avoid harm to Plaintiff NYAW.

53. As a result of Defendants' negligence, Plaintiff NYAW has incurred, investigation costs, and will incur remediation, removal costs and other damages related to 1,4 Dioxane contamination.

54. Defendants' acts were willful, wanton or reckless and conducted with a reckless indifference to the rights of Plaintiff NYAW.

55. As a direct and proximate result of Defendants' actions and omissions, Plaintiff NYAW has suffered and continues to suffer damages.

## COUNT FOUR – PRIVATE NUISANCE

56. Plaintiff hereby incorporates by reference the allegations set forth in paragraphs 1-35 of this Complaint as if they were set forth fully herein.

57. Through Defendants' acts and omissions, Defendants' 1,4 Dioxane and 1,4 Dioxane-containing products have directly and proximately caused environmental contamination that has unreasonably interfered with, and continues to interfere with, Plaintiff NYAW's use and enjoyment of its public water supply systems and the groundwater sources that supply those systems.

58. The private nuisance created by Defendants is continuing.

59. Defendants have failed, and continue to fail, to abate the private nuisance.

60. As a result of the private nuisance, Plaintiff NYAW has suffered, continues to suffer, and will in the future suffer significant harm and damages, including investigation, cleanup, remediation, and removal costs and damages related to the detection, treatment and removal of 1,4 Dioxane constituents that have and will continue to migrate into Plaintiff NYAW's wells.

61. Defendants knew that their actions and omissions as described herein would cause injury and damage, including the contamination of Plaintiff NYAW's public drinking water wells. Defendants' acts and omissions were performed knowingly, willfully, and with oppression, fraud and/or malice. Defendants' promotion of the sales of 1,4 Dioxane and its 1,4 Dioxane products were undertaken in conscious disregard for the probable dangerous consequences of that conduct and its reasonably foreseeable impacts on the public, thereby entitling Plaintiff NYAW to an award of punitive damages so as to punish Defendants and compensate for the aggravating circumstances sustained by Plaintiff.

## COUNT FIVE – PUBLIC NUISANCE

62. Plaintiff hereby incorporates by reference the allegations set forth in paragraphs 1-35 of this Complaint as if they were set forth fully herein.

63. Through Defendants' acts and omissions, Defendants' 1,4 Dioxane and 1,4 Dioxane-containing products have directly and proximately caused environmental contamination that has unreasonably interfered with, and continues to interfere with, Plaintiff NYAW's right to a clean environment, which right Plaintiff holds in common with members of the public, and which right is specifically permitted.

64. Through Defendants' acts and omissions, Defendants' 1,4 Dioxane and 1,4 Dioxane-containing products have directly and proximately caused environmental contamination that has unreasonably interfered with, and continues to interfere with, Plaintiff NYAW's right to the use of groundwater as a source of potable water, which right Plaintiff holds in common with members of the public, and which right is specifically permitted.

65. The public nuisance created by Defendants is continuing.

66. Defendants have failed, and continue to fail, to abate the public nuisance.

67. As a result of the public nuisance, Plaintiff NYAW has suffered, continues to suffer, and will in the future significant harm and damages special to Plaintiff and different in kind from those the general public may have suffered, including investigation, cleanup, remediation, and removal costs and damages related to the detection, treatment and removal of 1,4 Dioxane constituents that have and will continue to migrate into Plaintiff's wells, such that Defendants should be required by injunction to abate the nuisances they have created.

**COUNT SIX – TRESPASS**

68. Plaintiff hereby incorporates by reference the allegations set forth in paragraphs 1-35 of this Complaint as if they were set forth fully herein.

69. Plaintiff NYAW is the owner and is in possession of the wells within its drinking water supply systems that access the groundwater in the state of New York to supply drinking

water to the public.

70. Plaintiff has the rights to use of the groundwater in the state of New York for purposes of supplying drinking water to the public.

71. Plaintiff has not extended permission to Defendants to allow 1,4 Dioxane contamination to enter Plaintiff's water supply wells.

72. Defendants knew or should have known when they marketed 1,4 Dioxane and their 1,4 Dioxane products that such products had a propensity to infiltrate groundwater aquifers and surface waters and thereby contaminate Plaintiff's wells and pose a threat to the public drinking waters supplied by Plaintiff.

73. Defendants' actions and omissions each constitute a substantial factor in the contamination of Plaintiff's wells and each Defendant aided and abetted and is jointly responsible for the trespasses and injuries and damages resulting therefrom.

74. Defendants' actions and omissions directly and proximately caused harm to Plaintiff.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff New York American Water ("NYAW") respectfully requests that this Court:

> a. Enter judgment finding Defendants jointly and severally liable for all costs and damages incurred by Plaintiff, including but not limited to prior, interim and future capital as well as operation and maintenance costs related to 1,4 Dioxane contamination; including the reasonable costs of sampling, investigations, and assessment of injury, and destruction or loss resulting from 1,4 Dioxane contamination;

b. Enter judgment finding Defendants liable for punitive damages;

c. Enter judgment finding Defendants liable for consequential damages;

d. Enter judgment requiring, via injunction, Defendants to abate the nuisance they have created;

e. Award Plaintiff NYAW costs and reasonable attorney fees incurred in prosecuting this action, together with prejudgment interest, to the full extent permitted by law; and

f. Award NYAW such other relief as this Court deems appropriate.

## **DEMAND FOR JURY TRIAL**

Demand is hereby made for a trial by jury.

Dated: April 11, 2019
New York, New York

By: */s/ Frank R. Schirripa*
Frank R. Schirripa (FS-1960)
Michael A. Rose (MR-2088)
**HACH ROSE SCHIRRIPA
& CHEVERIE LLP**
112 Madison Avenue, 10th Floor
New York, New York
(212) 213-8311
(212) 779-0028 (fax)
Email: *fschirripa@hrsclaw.com*
Email: *mr@hachroselaw.com*

J. Nixon Daniel, III (*pro hac vice pending*)
Mary Jane Bass (*pro hac vice pending*)
**BEGGS & LANE, RLLP**
501 Commendencia Street
Pensacola, FL 32502
(850) 432-2451
Email: *jnd@beggslane.com*
Email: *mjb@beggslane.com*

T. Roe Frazer II (*pro hac vice pending*)
**FRAZER PLC**
1 Burton Hills Boulevard, Suite 215
Nashville, Tennessee 37215
(615) 647-0990
Email: *roe@frazer.law*


Frederick T. Kuykendall (*pro hac vice pending*)
**THE KUYKENDALL GROUP**
P.O. Box 2129
Fairhope, AL 36533
(205) 252-6127
Email: *ftk@thekuykendallgroup.com*

*Attorneys for Plaintiff*